~~SEALED~~

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB - 2 2015

CLERK, U.S. DISTRICT COURT
By _____ Deputy

# United States District Court

**NORTHERN** DISTRICT OF **TEXAS**

| | |
|---|---|
| **In the Matter of the Search of** (Name, address or Brief description of person, property or premises to be searched) a white Apple iPhone, serial number F2LMP6HFF9V currently in the custody of the Navarro County Sheriff's Office, Corsicana, Texas which is more fully described in Attachment A | **APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT** <br><br> **CASE NUMBER:** 3:15-MJ- 055-BN |

I **Scott W. Jones** being duly sworn depose and say:

I am a(n) **Special Agent with the Veteran Affairs Office of Inspector General (VA/OIG)** and have reason to believe that on the person of or **XX** on the property or premises known as (name, description and/or location)

(SEE ATTACHMENT A).

in the **NORTHERN** District of **TEXAS** there is now concealed a certain person or property, namely (describe the person or property to be seized)

(SEE ATTACHMENT B).

**which is** (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure) property that constitutes evidence of the commission of a crime, contraband, the fruits of crime, and is, otherwise, criminally possessed, **concerning a violation of Title 21 United States code, Section(s) 841(a)(1) and 846**. The facts to support a finding of Probable Cause are as follows:

(SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT SCOTT W. JONES).

Continued on the attached sheet and made a part hereof.    XX Yes __ No

_____
Signature of Affiant
SCOTT W. JONES
Special Agent, VA/OIG

Sworn to before me, and subscribed in my presence

**February 2, 2015**                              at         **Dallas, Texas**
Date                                                         City and State

**DAVID L. HORAN**
**United States Magistrate Judge**                 _____
Name and Title of Judicial Officer                 Signature of Judicial Officer

## AFFIDAVIT FOR SEARCH WARRANT

I, Scott W. Jones, hereafter referred to as Affiant, duly sworn under oath, make the following statement of facts which are true and correct to the best of my knowledge:

### INTRODCUTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) of the Veteran Affairs Office of Inspector General (VA OIG), South Central Field Office (FO), Dallas, Texas. I have been employed as a SA of the VA OIG since September 2014. I am currently assigned to the Dallas Field Office of the VA OIG.

2. Prior to becoming a SA with the VA-OIG, I was a SA with the United States Secret Service for 16 years, my last assignment being the Miami Field Office located in the Southern District of Florida. I conducted numerous investigations that ranged from threats to the President of the United States, financial crimes investigations, and narcotics investigations, as a member of the Drug Enforcement Agency (DEA) High Intensity Drug Trafficking Area Taskforce (HIDTA). Prior to working as United States Secret Service Special Agent I was employed as Houston, Texas police officer. As a Houston Police Officer I investigated controlled substance offenses, firearms violations, domestic violence, assault, and other violent crimes. All of the aforementioned duties combine for over nineteen years of law enforcement experience.

3. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of electronic devices, more particularly described in Attachment A, which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

4. As a SA with the VA OIG and my previous experience, I am vested with the authority to investigate violations of federal laws, including those found in Title 18 and 21, and have received training in investigating such laws. I have participated in and conducted interviews with multiple defendants involved in the use, transportation, and illegal sale of controlled dangerous substances. I have also spoken with other law enforcement agents about their experience with defendants involved in the use, transportation, and illegal sale of controlled dangerous substances. During the course of these interviews and my discussions with law enforcement agents I have learned how individuals involved in drug distribution schemes and networks (1) use and disperse the illegal proceeds generated from the illegal sale of controlled dangerous substances, including, but not limited to, prescription medications; (2) maintain records; (3) conspire to deceive law enforcement and rival distributors of controlled dangerous substances; and (4) hide money, that is the proceeds of illegal drug distribution.

5. The statements in this affidavit are based in part on information provided by other law enforcement agency officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities related to violations of Title 21 U.S.C. § 841(a)(1) and 846 is located in the cellular telephone seized from KERENSA MARA (hereafter MARA) on 1/16/2015.

## BACKGROUND OF THE INVESTIGATION

6. On January 16, 2015, JAMES RADFORD (hereafter RADFORD) and his girlfriend, MARA, were stopped by Navarro County Texas Sheriff's Office for failing to signal a lane change while traveling northbound on Interstate 45. During the traffic stop RADFORD

gave deputies permission to search his vehicle and the containers within. During their search the deputies found $13,000 in U.S. currency and casino receipts, two blank Veteran Affairs Medical Center (VAMC) prescription pads and approximately 1000 prescription pills to include; hydrocodone, Xanax, Lortab, Tramadol and various other amphetamine brands. Subsequently, RADFORD and MARA were arrested and charged with three state felony counts of manufacture and delivery of a controlled substance. Additionally MARA's Apple iPhone which is white in color bearing serial number F2LMP6HFF9V was in the car.

7. On January 27, 2015, in the presence of his defense attorney, RADFORD voluntarily provided a detailed statement as to the nature of his relationship with MARA and their ongoing criminal enterprise which entailed illegally obtaining and selling prescription medications in the Eufaula, Oklahoma area.

8. In his statement, RADFORD stated, REBEL CRABTREE, an employee of the VAMC in Muskogee, Oklahoma stole blank prescription pads from the VAMC and gave them to MARA. RADFORD further told Law Enforcement that MARA accessed photographs of various physicians' signatures, which MARA stored on her cellular telephone to forge those signatures onto the aforementioned prescription pads. RADFORD further told Law Enforcement that MARA also stores legitimate DEA prescription numbers on her phone. And that those numbers are also transcribed onto the forged prescription pad to ensure the forgery appears legitimate. RADFORD further told Law Enforcement that MARA gives CRABTREE half of the pills illegally obtained as payment for the stolen VAMC prescription pads. RADFORD indicated CRABTREE and MARA often communicate through Short Message Service (SMS); also known as text messaging.

9. RADFORD explained MARA employs approximately seven individuals who

would negotiate the forged prescriptions at various local pharmacies, in the Eufaula, Oklahoma area, for $100 per prescription. RADFORD indicated he had negotiated forged prescriptions approximately five times for MARA. RADFORD continued by stating that the majority of MARA's communications with the individuals working for her were through SMS on her cellular telephone and that telephone numbers associated with such individuals would be stored on her cellular telephone.

10. RADFORD stated MARA kept track of her narcotic transactions via the calendar on her cellular telephone, noting the date and location the forged prescriptions were negotiated and by whom.

11. RADFORD estimated MARA makes approximately $2500 daily in the sale of illegally obtained narcotics. The majority of MARA's communications with the individuals purchasing her narcotics are through SMS on her cellular telephone.

12. Continuing on January 27, 2015, RADFORD, in the presence of his defense attorney, gave consent to search his cellular telephone for material of evidentiary value. While reviewing RADFORD'S SMS conversations with MARA, the Affiant observed several messages referring to "scrips" and going to the "pharm" (pharmacy). Additionally, the Affiant observed a screenshot MARA sent to RADFORD where she was asking another individual to provide the spelling of their name for the prescription she was filling out. Affiant is aware that "scripts" is common slang for prescriptions.

13. Continuing on January 27, 2015, Captain Stan Farmer of the Navarro County Sheriff's Office provided 22 recorded Navarro County Jail telephone conversations between MARA and her husband, MICHAEL BRANDT. The calls were made between January 16 and January 27, 2015. During the aforementioned telephone conversations MARA made numerous

references requesting BRANDT to "tell Rebel (CRABTREE) to get some "applications" from the VA so I can make some money." Additionally, MARA directed BRANDT to contact CRABTREE and get "those little papers I like so we can make more money." MARA also intimated she had made new contacts in the Navarro County Jail that would assist in their criminal activities and stated "everything is set up to make money on the way back home." Affiant is aware that the Navarro County Sheriff's Office records inmates telephone conversations emanating from the Navarro County jail and that jail inmates are advised prior to making any phone calls that all calls will be recorded and monitored. MARA was an inmate in Navarro County jail between January 16 and January 27, 2015.

16. Affiant is aware from his training and experience that cellular telephones are routinely used to conduct and/or facilitate drug transactions and to take photographs of drug activity as well as used to create records of drug dealing activity. As such, cellular telephones are often an essential tool of drug traffickers.

17. Affiant is aware from his training and experience that data contained on a cellular telephone or a computer can often be recovered days weeks or months after it has been deleted through a forensic examination. Additionally Affiant is aware from his training and experience that it is now common practice to communicate with other witnesses and potential co-defendants via technology such as cellular telephones either through the use of internet, SMS/text messaging, or telephone conversations. Affiant believes based upon all the above factors as well as the proximity of the telephones to the drugs in the automobile that there were communications regarding the distribution of illegally obtained prescription pills.

18. The property to be searched is the following items:

   1) Apple iPhone white in color (serial number F2LMP6HFF9V);

Hereinafter referred to as the "Device," which is currently in the lawful possession of the Navarro Country Sheriff's Office in Corsicana, Texas in the Northern District of Texas. The device came into the Navarro County Sheriff's Office possession after being seized during a lawful traffic stop and search of said vehicle.

19. Affiant is aware from his training and experience that an off-site search of the device seized on January 16, 2015, from MARA is necessary due to the volume of evidence stored and the requirements of highly technical and expert skill to conduct the telephone examination, as well as specialized equipment. Furthermore, Affiant is aware from his training and experience that cellular telephone users sometimes seek to hide evidence of wrongdoing by concealing data within cellular telephone equipment and storage devices through a number of methods including, but not limited to, deleting files, the use of innocuous or misleading file names, and using encryption requiring the use of a password to decipher the file into a readable form as well as talking in code that only is understood in the context of an entire conversation.

20. Based on my training, experience, and research, I know that the Device has capabilities that allow them to serve as a wireless telephone and/or a digital camera and/or a portable media player and/or a GPS navigation device and/or a PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Specifically, from my training and experience, I have learned the following about the use of cellular telephones and other electronic devices used for communicating and storing data:

    a. Cellular telephones are used to communicate various aspects of the drug and money laundering trade.

    b. Members of a drug trafficking organization (DTO) will often communicate over multiple devices or technologies within a device, such as texting, e-mail, instant messaging, and photos, to name a few, to avoid law enforcement detection.

6

c. DTO leaders communicate the direction of the organization with a multitude of individuals ranging from the source of the drugs to couriers and distributors in various parts of a city, state, country, or foreign nation. Likewise, DTO members utilize these devices to communicate the return of illegal monetary proceeds to the source of the drugs.

d. Drug/money couriers often utilize various communication devices to update the individual who is actually in charge of the drugs/money as to their location and status (driving, sleeping, stop for fuel, traffic stop, etc.).

e. These devices are often equipped with digital cameras and telephones possess the capability to transmit and/or store electronic images.

f. Drug traffickers maintain photographs of illegal drugs, firearms, large quantities of U.S. Currency, or other people involved in their narcotics trafficking business. These photos are stored on cellular telephones and often are transmitted or sent from one electronic media device to another.

g. Cellular telephones may also contain notes, addresses, and route information regarding drug trafficking or money laundering that are recorded by the subject who possesses the telephone.

h. Text messages and emails are often used by two or more persons to communicate information regarding narcotics trafficking, and other illegal activities, between telephones and computers.

21. Based on the facts, MARA appears to be the primary facilitator of this DTO.

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. I believe there is probable cause to believe that this forensic electronic evidence will be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a telephone/computer is evidence may depend on other information stored on the telephone/computer and the application of knowledge about how a telephone/computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including, but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

25. For the above-stated reasons, I request authorization to provide the described cellular phone to the Navarro County Sheriff's Office for forensic examination for the purpose of identifying and preserving evidence. That forensic examination will be conducted in a forensic office, which may not be located within this judicial district.

26. Based upon the above and foregoing facts, Affiant requests that search warrants issued according to law, directed to any Federal Agent (or any agency whose assistance is

needed to execute such Search Warrant) authorize to serve, command that he/she search the records herein described for the property aforesaid, and to seize the same.

Respectfully submitted,

_____
Scott W. Jones
Special Agent
Veteran Affairs Office of Inspector General

Subscribed and sworn to before me on the 2d day of February, 2015.

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE